## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH SIAH,<br><br>     Plaintiff,<br><br> v.<br><br>ZENDESK, INC., MIKKEL SVANE, CARL BASS, MICHAEL FRANDSEN, BRANDON GAYLE, THOMAS SZKUTAK, ARCHANA AGRAWAL, MICHAEL CURTIS, STEVE JOHNSON, and HILARIE KOPLOW-MCADAMS,<br><br>     Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Sarah Siah ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Zendesk, Inc. ("Zendesk" or the "Company") and Zendesk's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to an investor group that includes Permira, Hellman & Friedman LLC, GIC, and a wholly-owned subsidiary of the Abu Dhabi Investment Authority, through an affiliated company named Zoro BidCo, Inc. and its wholly-owned subsidiary Zoro Merger Sub, Inc. (collectively the "Investor Group").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be

filed with the Securities and Exchange Commission ("SEC") on July 25, 2022. The Proxy recommends that Zendesk stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Zendesk is acquired by the Investor Group. The Proposed Transaction was first disclosed on June 24, 2022, when Zendesk and the Investor Group announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which the Investor Group will acquire all of the outstanding shares of common stock of Zendesk for $77.50 per share (the "Merger Consideration"). The deal is valued at approximately $10.2 billion and is expected to close in the fourth quarter of 2022.

3.      The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Zendesk management, as well as the financial analyses conducted by Qatalyst Partners LP ("Qatalyst") and Goldman Sachs & Co. LLC ("Goldman Sachs"), Zendesk's financial advisors.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to Zendesk's stockholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to Zendesk's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Zendesk.

6.      Defendant Zendesk is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 989 Market Street, San Francisco, California 94103. Zendesk common stock trades on NYSE under the ticker symbol "ZEN."

7.      Defendant Mikkel Svane has been CEO and a director of the Company since 2007. Defendant Svane is a co-founder of the Company.

8.      Defendant Carl Bass has been a director of the Company since 2016. Defendant Bass serves as Lead Independent Director.

9.      Defendant Michael Frandsen has been a director of the Company since 2017.

10.     Defendant Brandon Gayle has been a director of the Company since 2021.

11.     Defendant Thomas Szkutak has been a director of the Company since 2019.

12.     Defendant Archana Agrawal has been a director of the Company since 2020.

13.     Defendant Michael Curtis has been a director of the Company since 2019. Defendant Curtis serves as Interim Chief Engineering Officer.

14.     Defendant Steve Johnson has been a director of the Company since 2021.

15.     Defendant Hilarie Koplow-McAdams has been a director of the Company since 2017.

16.     Defendants Svane, Bass, Frandsen, Gayle, Szkutak, Agrawal, Curtis, Johnson, and Koplow-McAdams are collectively referred to herein as the "Board."

17.     Nonparty Permira Holdings Limited is a global investment firm with offices around

the world, including in London, United Kingdom, Tokyo, Japan, and Menlo Park, California.

18.     Nonparty Hellman & Friedman is a private equity firm with offices in San Francisco, California, New York, New York, and London, United Kingdom.

19.     Nonparty GIC is a sovereign investment entity that manages and invests Singapore's foreign reserves.

20.     Nonparty Abu Dhabi Investment Authority is a sovereign investment entity that invests funds of the Government of Abu Dhabi.

21.     Nonparty Zoro BixCo, Inc. is a Delaware corporation.

22.     Nonparty Zoro Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Zoro BidCo, Inc.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

24.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and the Proposed Transaction**

26.     Zendesk is a software company that provides software-as-a-service customer relationship management solutions to companies large and small. Zendesk's solutions include a product for managing customer service requests, a messaging software to communicate with customers, and a call center product. The Company had over 111,000 customers in more than 160 countries across the world as of December 31, 2021.

27.     On June 24, 2022, the Company entered into the Merger Agreement with the Investor Group. According to the press release issued that day announcing the Proposed Transaction:

### ZENDESK TO BE ACQUIRED BY INVESTOR GROUP LED BY HELLMAN & FRIEDMAN AND PERMIRA FOR $10.2 BILLION

*Shareholders to receive $77.50 per share in cash*

*Zendesk to become a privately held company upon completion of the transaction*

**SAN FRANCISCO – June 24, 2022 –** Zendesk, Inc. (NYSE: ZEN) today announced it has entered into a definitive agreement to be acquired by an investor group led by leading global investment firms Permira and Hellman & Friedman LLC ("H&F") in an all-cash transaction that values Zendesk at approximately $10.2 billion. Under the terms of this agreement, Zendesk shareholders will receive $77.50 per share. The offer represents a premium of approximately 34% over Zendesk's closing stock price on June 23, 2022, the last full trading day prior to this announcement.

"This is the start of a new chapter for Zendesk with partners that are aligned with the strength of our agile products and talented team, and are committed to providing the resources and expertise to continue our growth trajectory," said Mikkel Svane, founder, chairman and CEO, Zendesk. "With Hellman & Friedman and Permira's support, we'll continue to execute on our long-term strategy with our customers as our top priority, taking full advantage of the opportunity we see to help businesses navigate the ever changing expectations and demands of their customers."

"The Board conducted an extensive strategic review over a three month period, receiving an actionable offer from Hellman & Friedman and Permira after the termination of our formal process," said Carl Bass, lead independent director,

Zendesk. "This transaction provides certainty of value for our shareholders at a significant premium to Zendesk's trading price. The extensive strategic review process included the evaluation of both standalone and transactional alternatives and considered a range of factors including current and anticipated market conditions, business momentum and long-term outlook. During this period, we also worked constructively with major shareholders. The Board concluded that this transaction was the best alternative and the Board voted unanimously to support this transaction."

"Zendesk has reimagined customer service software and empowers businesses to transform how they communicate with their customers in an increasingly digital world. We believe Zendesk is uniquely positioned to enable meaningful interactions and deliver compelling business outcomes across any channel," said Ryan Lanpher, Partner at Permira. "We look forward to partnering with Zendesk's management team and talented employees to help them accelerate product innovation and achieve their growth ambitions," added Brian Ruder, Partner and Co-Head of Technology at Permira.

"Over the past 15 years, Zendesk has revolutionized how companies serve their customers and has become a leading platform within the customer experience ecosystem. We deeply believe in the company's growth opportunity as it continues to help businesses across the world delight their customers," said Tarim Wasim, Partner at Hellman & Friedman. "We see tremendous value in Zendesk's platform and ability to grow at scale. Its intuitive yet powerful offering serves over 100,000 companies, ranging from the smallest businesses to the largest enterprises," added Stephen Ensley, Partner at Hellman & Friedman.

**Transaction Details**

In addition to Hellman & Friedman and Permira, the investor group includes a wholly-owned subsidiary of the Abu Dhabi Investment Authority (ADIA), and GIC.

The transaction, which has been unanimously approved by Zendesk's Board of Directors, is expected to close in the fourth quarter of this year and is subject to customary closing conditions, including Zendesk stockholder approval. Hellman & Friedman and Permira have arranged for debt and equity financing commitments for the purpose of financing the transaction. Upon closing of the transaction, Zendesk will operate as a privately-held company.

**B.  The Materially Incomplete and Misleading Proxy**

28.     On July 25, 2022, Defendants filed the Proxy with the SEC. The purpose of the

Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary

for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

29. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Qatalyst's fairness opinion, Qatalyst reviewed "the June 2022 Case prepared by Zendesk management." Goldman Sachs reviewed "certain internal financial analyses and forecasts for Zendesk . . .prepared by Zendesk management" in connection with the rendering of its fairness opinion. Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Zendesk's management provided to the Board and Qatalyst and Goldman Sachs.

30. Notably, Defendants failed to disclose all of the line items underlying the March 2022 Case projected Operating Income (non-GAAP), Unlevered Free Cash Flow, and Unlevered Free Cash Flow (Incl. Stock-Based Compensation). The Proxy also fails to disclose all of the line items underlying the June 2022 Case projected Operating Income (non-GAAP), Unlevered Free Cash Flow, and Unlevered Free Cash Flow (Incl. Stock-Based Compensation). This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Qatalyst's Financial Analyses*

31. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the inputs and assumptions underlying the selection of discount rates of 9.5% to 13.0%. The Proxy further fails to disclose the estimated terminal value for Zendesk. In addition, the Proxy fails to

disclose the cash and cash equivalents of Zendesk as of March 31, 2022, the implied net present value of estimated federal tax savings from net operating losses and research and development tax credits, and the face value of the Company's outstanding convertible debt as of March 31, 2022. Finally, the Proxy fails to disclose the number of fully diluted shares of Zendesk outstanding as of June 22, 2022.

### *Materially Incomplete and Misleading Disclosures Concerning Goldman Sachs' Financial Analyses*

32.     With respect to the *Illustrative Discounted Cash Flow Analysis,* the Proxy fails to disclose the inputs and assumptions underlying the selection of discount rates of 10% to 12%. The Proxy further fails to disclose the range of terminal values. In addition, the Proxy fails to disclose the amount of net cash that Zendesk had as of March 31, 2022, the net present value of net operating losses, and the number of fully diluted shares of Zendesk outstanding as utilized in the analysis.

33.     With respect to the *Illustrative Present Value of Future Share Price Analysis*, the Proxy fails to disclose Zendesk's forecasted net cash as of December 31 for 2022 to 2024. The Proxy also fails to disclose the number of projected year-end fully diluted outstanding shares of Zendesk for 2022 to 2024. In addition, the Proxy fails to disclose the inputs and assumptions underlying the selection of the discount rate of 10.9%.

34.     With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the value of each of the selected transactions. The Proxy also fails to disclose Zendesk's net cash as of March 31, 2022, as well as the number of fully diluted outstanding shares of Zendesk common stock as utilized in the analysis.

*Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

35.     The Proxy also fails to disclose material information concerning the sales process. The Proxy fails to disclose whether Qatalyst rendered any services to any member of the Investor Group in the two years preceding its fairness opinion, and if so, the amount of compensation received.

36.     The Proxy also fails to disclose whether Goldman Sachs provided any services to GIC or the Abu Dhabi Investment Authority in the two years prior to rendering its fairness opinion and, if so, the compensation received for such services.

37.     The Proxy fails to disclose the basis for entering into non-disclosure agreements that contained standstill provisions with nine of the eleven parties. The Proxy also fails to disclose the date upon which the standstill provisions no longer were in effect. The disclosure of the terms of any standstill provisions is crucial to Plaintiff being fully informed of whether her fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

38.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

39.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

40.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the

9

Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

41.     Further, the Proxy indicates that on June 23, 2022, Qatalyst and Goldman Sachs reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board their oral opinions, which were confirmed by delivery of written opinions dated June 23, 2022 and June 24, 2022, respectively, to the effect that the Merger Consideration was fair, from a financial point of view, to Zendesk stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Qatalyst's and Goldman Sachs' financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

42.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that she will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Defendants have filed the Proxy with the SEC with the intention of soliciting Zendesk stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

45.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Zendesk, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Zendesk shares and the financial analyses performed by Qatalyst and Goldman Sachs in support of their fairness opinions; and (iii) the sales process.

48.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Qatalyst and Goldman Sachs reviewed and discussed their financial analyses with the Board during various meetings including on June 23, 2022, and further states that the Board considered Qatalyst's and Goldman Sachs' financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified

above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

49.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Zendesk within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Zendesk and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

54.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy

with the SEC or otherwise disseminating a Definitive Proxy to Zendesk stockholders unless and until Defendants agree to include the material information identified above in the Definitive Proxy;

B.       Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.       In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.       Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.       Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 3, 2022                     **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*

14